Rodney R. Bays, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Hydril Company, Intervenor.

Argued October 5, 1981, before President Judge CRUMLISH, JR. and Judges ROGERS and CRAIG, sitting as a panel of three.

*Joseph M. Olimpi,* for petitioner.

No appearance for respondent.

*Henry J. Wallace, Jr.,* with him *John E. Lyncheski,* and *Stephen J. Stabler, Reed, Smith, Shaw & McClay,* for intervenor.

Opinion by Judge Rogers, November 17, 1981:

Rodney Bays who was discharged from his job has appealed from an order of the Unemployment Compensation Board of Review denying him unemployment compensation benefits on the ground that his unemployment was the result of his willful misconduct. Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. 802(e). We affirm.

Bays was employed as a craneman by Hydril Company for about five and one-half years. He was a member of Local Union 2755 of the United Steelworkers of America which was the collective bargaining representative of Hydril's employees. The collective bargaining agreement provided that union members would not strike or engage in work stoppages and that no member-employee would participate in any such activities. The agreement also provided for usual grievance procedures.

On August 20, 1979, union members initiated a work stoppage, in violation of the agreement, in a dispute over disciplinary action taken against four employees. The employees returned to work August 23 but renewed the unlawful strike on August 27. The second stoppage ended September 4.

There is evidence that Bays was regularly on the picket line on the occasions of both strikes.

All employees who participated in the illegal strikes received some form of disciplinary action, ranging from dismissal to letters of warning. Twenty-two employees were discharged, forty-five were suspended and about three hundred were sent letters of warning. The employer adduced evidence that the twenty-two discharged employees consisted of those such as Bays who were regularly on the picket line during the strikes. In addition there was evidence

that Bays used very abusive language toward a company supervisor.

Participation in an illegal work stoppage is willful misconduct. *Progress Manufacturing Company v. Unemployment Compensation Board of Review*, 406 Pa. 163, 176 A.2d 632 (1962); *Unemployment Compensation Board of Review v. National Aluminum Company*, 22 Pa. Commonwealth Ct. 519, 349 A.2d 527 (1975). Bays does not dispute the fact that he participated in the illegal work stoppages. He argues that his actions should not disqualify him for compensation because other employees who participated in the work stoppage were not discharged. He relies in this regard on *Woodson v. Unemployment Compensation Board of Review*, 461 Pa. 439, 336 A.2d 867 (1975). *Woodson* is not pertinent. There, the evidence was the employer had discharged black employees for lateness but did not fire white employees who were guilty of the same offense. On these facts, the Supreme Court concluded that the employer had established one standard for blacks and another for whites and that the use of such a standard in determining entitlement to unemployment compensation constituted state action based on racially discriminatory policies. There is nothing in this record suggesting that the claimant's discharge for engaging in illegal strikes was in furtherance of a policy of racial discrimination which would be furthered by denying unemployment compensation. More apposite is the case of *Moran v. Unemployment Compensation Board of Review*, 42 Pa. Commonwealth Ct. 195, 400 A.2d 257 (1979) where a union steward discharged for participating in an illegal work stoppage and denied unemployment compensation, contended that he had been discharged because he was a union official and cited in support of this proposition a National Labor Relations Board determination that his discharge was an unfair labor

practice. We held that for the purposes of grant or denial of unemployment compensation the matter properly under scrutiny is the employee's conduct, not that of the employer, and that the claimant's employer was entitled to expect that a union official would discourage rather than, as was the case, encourage other employees to disobey a no-strike clause.

In short, unless the employer's disparate treatment of his employees with respect to discharges for misconduct demonstrates that the action of the discharge complained of is in reality an act of unlawful discrimination, which the denial of unemployment compensation would reinforce, the compensation authorities' determination that compensation should be refused will not be disturbed on the ground that other employees arguably equally guilty of misconduct were not discharged.

Order affirmed.

ORDER

AND Now, this 17th day of November, 1981, the order of the Unemployment Compensation Board of Review dated October 3, 1980 is affirmed.