Gustav A. Stickloon, Petitioner *v*. Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Submitted on briefs January 30, 1984, to Judges ROGERS, CRAIG and COLINS, sitting as a panel of three.

*James D. Watt, Jr.,* for petitioner.

*Charles G. Hasson,* Acting Deputy Chief Counsel, with him, *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE COLINS, May 3, 1984:

This is an appeal by Gustav A. Stickloon (claimant) from an Order of the Unemployment Compensation Board of Review (Board) affirming a referee's decision denying benefits on the ground that the claimant's unemployment was the result of his own willful misconduct.[1]

The claimant worked for approximately eight years as a saw operator for United Metal Receptacle (employer). His last day of work was January 12, 1982, on which date he was told he was fired for having participated in an illegal work stoppage which was in violation of a labor-management agreement between the International Molders and Allied Workers Union and the employer. At the time of the stoppage the claimant was a member of the International Molders and Allied Workers Union and was a Union Official, the shop committeeman.

Our scope of review in unemployment cases where the party with the burden of proof has prevailed before the Board is limited to a determination of whether the Board's findings of fact are supported by substantial evidence and whether an error of law has been committed. *Gardner v. Unemployment Compensation Board of Review,* 71 Pa. Commonwealth Ct. 512, 454 A.2d 1208 (1983).

---

[1] Section 402(e) of the Unemployment Compensation Law, Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended,* 43 P.S. §802(e).

The Board affirmed the decision of the Referee who found, *inter alia*, that:

1. . . . [The Claimant's] last day of work was January 12, 1982.

. . . .

5. On January 8, 1982, the employees at the employer's facility commenced a work stoppage due to the employer's suspending a fellow employee for alleged infraction of the work rules.

6. Prior to the commencement of the shift on January 8, 1982, claimant as the shop committeeman, tried to persuade the workers to return to work because they would be in violation of Article XII of the labor-management agreement to no avail.

7. The plant superintendent then requested claimant to report to work. Claimant refused because the men voted to stay out and since he was part of the union, he was considered to be part of the same body of men.

8. On January 8, 1982 the employer issued an ultimatum to the employees that they either return to work on Monday, January 11, 1982, or lose their jobs.

9. On January 11, 1982 the employees returned to work and the claimant was discharged for participating in the work stoppage which was in violation of the labor-management agreement in effect during the stoppage.

10. The claimant participated in the unlawful work stoppage by refusing to report to work.

There is no evidence that the claimant participated in the work stoppage.[2] The testimony clearly indicates

---

[2] QCL: Did Mr. Stickloon state that there would be a job action?

that the claimant fulfilled his obligations[3] to his employer and that he made several reasonable efforts to persuade the workers to return to work, because, if they did not, they would be in violation of Article XII[4] of the labor-management agreement.[5]

On January 8, 1982 the employees at the employer's plant commenced a work stoppage when a fellow employee was suspended for alleged infraction of the work rules. On the employer's parking lot, despite bitterly cold weather, the claimant and other union officials tried to persuade the striking employees to return to work. However, the claimant and the other union officials' efforts were impeded by the employ-

---

AEW: No sir. (N.T. p. 22, 3/5/82)

QCL: Did you inform any individuals that they were allowed to strike?

AC2 [claimant]: No.

QCL: Did any member of your committee or the shop steward sanction a job action at any time during this week?

AC2: No. (N.T. p. 49, 3/5/82)

[3] The claimant fulfilled his duty as described by his employer. When asked what this duty was, the employer's witness stated that "if there is a wildcat—say presumably by the men . . . , [the union officials] should be out there fighting getting those men in the factory. That's what their job is." (N.T. p. 17, 3/5/82)

[4] Article XII states that:

During the term of this agreement, there shall be no strikes, lock-outs, stoppage of work, slow-downs or any other interference with production. It is understood, however, that the union will not be responsible or liable in any manner whatsoever for any strikes, stoppage of work, slow-downs or any other interference with production unless the same are authorized or ratified by the union. The union shall make reasonable efforts to bring to a halt promptly any unauthorized strike, stoppage of work, slow-down or any other interference with production.

[5] The referee, in his findings of fact, number 6, states, "Prior to the commencement of the shift on January 8, 1982 claimant, as shop committee man, tried to persuade the workers to return to work because they would be in violation of Article XII of the labor-management agreement to no avail."

er, who threatened to have them arrested if they did not get off the lot. Even after being ordered off the employer's property, the claimant and other union officials continued to try to get the men to return to their jobs, and they immediately arranged another meeting at a nearby fire company.

Their efforts continued during the weekend, and a meeting was even held on Sunday, January 10, 1982. Again, at this meeting, the claimant and other union officials told the striking employees to return to work.

On Monday, January 11, 1982, the day the employees were told that they must return to work,[6] the claimant, along with the other employees, returned to their jobs as ordered.

The record nowhere indicates that the claimant refused any order by his employer to return to work. Also, the record does not contain any testimony that the employer told the claimant and the other employees that they were fired on Friday, January 8, 1982. The employer solely stated "that anyone who didn't return to work on Monday . . . would [be] discharge[d]."[7] The claimant and the other employees all returned to work on Monday.

However, even if there were substantial evidence showing the claimant participated in the work stop-

---

[6] QCL: And what did you tell them at that time?

AC [John R. Harley, Shop Steward] : The same thing I told them on Friday; that it was illegal; the strike was illegal; the company could fire everybody if they didn't return to work. *I had spoken to Mr. O'Hara on Friday and there was no change in the company's policy, other than as long as the men were back to work by Monday, everything would be status quo.* (N.T. p. 35, 3/5/82) (Emphasis added.)

[7] The referee, in his findings of fact number 8, states that "On January 8, 1982 the employer issued an ultimatum to the employees that they either return to work on Monday, January 11, 1982, or lose their jobs."

page, the employer's action in discharging the claimant was clearly discriminatory.

The employer, in this case, is seeking to impose vicarious liability on the claimant for the uncontrollable actions by a group of malcontents acting against the wishes of the national union. The record shows that the employer said that he would hold the claimant, and several other union officials, ''personally responsible'' if there was a strike. This Court has held that discharged claimants cannot be rendered ineligible for compensation due to willful misconduct, where an employer in disciplining a group of supervisory employees, makes a distinction by discharging certain of the employees solely, according to the evidence, on the basis of the leadership positions conferred upon them. *Birdsboro Corp. v. Unemployment Compensation Board of Review,* 59 Pa. Commonwealth Ct. 462, 430 A.2d 361 (1981). In *Davis v. Unemployment Compensation Board of Review,* 59 Pa. Commonwealth Ct. 91, 428 A.2d 1031 (1981), all the employees who participated in certain conduct were discharged. The court held that there was no discrimination, because it applied to all.

The employer in the case at bar allowed some employees to continue to work after their alleged participation in the work stoppage, while he discharged the claimant for the same reason. There is no substantial evidence that the claimant was not using his best efforts to get the men to return to work, pursuant to his prescribed duties. The claimant in this case acted in accordance with the higher standard contractually conferred upon him as a union official, by attempting to persuade his fellow workers to return to work.[8]

---

[8] See *Moran v. Unemployment Compensation Board of Review,* 42 Pa. Commonwealth Ct. 195, 400 A.2d 257 (1979). *Moran,* however, is distinguishable from the instant case because the union

For the foregoing reasons, the Order of the Unemployment Compensation Board of Review is reversed.

ORDER

AND Now, May 3, 1984, the decision of the Unemployment Compensation Board of Review, No. B-206209 dated May 27, 1982, is hereby reversed and the matter is remanded for the computation of benefits. Jurisdiction relinquished.

official, the shop steward, in *Moran* participated in the work stoppage and was, therefore, not selectively discharged.