The **ELECTRIC MATERIAL COMPANY**, Petitioner,

v.

**UNEMPLOYMENT COMPENSATION BOARD OF REVIEW**, Respondent.

Commonwealth Court of Pennsylvania.

Argued Aug. 22, 1995.
Decided Sept. 13, 1995.

---

Gery T. Nietupski, for petitioner.

David B. Washington, for respondent.

Before DOYLE, PELLEGRINI and NEWMAN, JJ.

NEWMAN, Judge.

The Electric Material Company (Employer) appeals from an order of the Unemployment Compensation Board of Review (Board) that reversed a referee's decision holding that Sylvain Cote (Claimant) was ineligible for benefits pursuant to Section 402(e) of the Unemployment Compensation Law (Law) [1] due to willful misconduct. We reverse.

Employer is in the business of reducing wire bars to specific sizes. During the reduction process, the bars are heated in a furnace to approximately 1,600 degrees Fahrenheit. The bars are then manipulated by metal tongs that weigh approximately ten pounds each. Employer's business relies on custom orders, many of which are "rush" orders. The nature of the business therefore requires Employer to depend heavily on its employees working mandatory overtime. Employer also has a rule prohibiting insubordination. The discipline for violating this rule is discharge.

Claimant worked for Employer as a hot roller. Claimant knew that overtime was mandatory. He also was aware of Employer's rule against insubordination and the consequences of violating it.

Claimant was scheduled to work a regular shift on May 11, 1994. At the end of his shift, however, he and his co-workers had only completed two of the three procedures

---

1. Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e), which provides that an employe shall be ineligible for compensation in any week in which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work.

required to be performed on the materials that they were processing. Employer needed these materials to meet the following day's production. Therefore, Employer requested Claimant and other employees to work overtime to complete the third processing step. Claimant and a co-worker refused and left Employer's premises.

Because Claimant refused to work mandatory overtime, Employer terminated his employment for insubordination. The co-worker who also refused to work overtime was disciplined but was not discharged for his actions.

Claimant subsequently applied for unemployment compensation benefits, and the Erie Job Center issued a determination granting benefits to him. Employer filed a timely appeal from this determination, and a referee reversed on the basis that Claimant was ineligible pursuant to Section 402(e) of the Law. Claimant then appealed to the Board. The Board reversed, holding that because Claimant was subjected to disparate treatment, he was not disqualified from receiving benefits under the Law. This appeal followed.

On appeal to this court, the two issues presented are (1) whether Claimant's refusal to work mandatory overtime constituted willful misconduct, and (2) if so, whether the Board erred in nevertheless holding that Claimant was eligible for benefits.[2]

█ Although the Law does not expressly define the term, this court has interpreted willful misconduct to include conduct that represents a wanton and willful disregard of an employer's interest, a deliberate violation of rules, a disregard of standards of behavior that the employer can rightfully expect from its employees, or negligence that manifests culpability, wrongful intent, evil design or intentional and substantial disregard for the employer's interests or the employee's duties and obligations. *Metropolitan Edison Co. v. Unemployment Compensation Board of Review*, 146 Pa.Commonwealth Ct. 648, 606 A.2d 955 (1992). Whether a claimant's con-

duct rises to the level of willful misconduct is a question of law subject to our review. *Lee Hospital v. Unemployment Compensation Board of Review*, 139 Pa.Commonwealth Ct. 28, 589 A.2d 297 (1991).

█ In the present action, the Board found, and the parties do not dispute, that due to the nature of Employer's business, it heavily relied upon and therefore required its employees to work overtime. Finding of Fact No. 3. The Board also found that Claimant knew that working overtime was mandatory. Finding of Fact No. 5. In addition, the Board found that Employer had a policy for imposing discipline, up to and including discharge, for insubordination, and that Claimant was aware of this policy. Findings of Fact No. 6, 7 and 8. Because neither party challenged the Board's findings, they are binding on this court on appeal. *Neaus v. Unemployment Compensation Board of Review*, 165 Pa.Commonwealth Ct. 326, 645 A.2d 356 (1994), *petition for allowance of appeal denied*, 540 Pa. 637, 658 A.2d 799 (1995).

█ In unemployment compensation cases, this court has held that an employee's refusal to perform even a single work assignment may constitute willful misconduct where, as here, the employer establishes the existence of a reasonable and known work rule. *American Racing Equipment, Inc. v. Unemployment Compensation Board of Review*, 144 Pa.Commonwealth Ct. 310, 601 A.2d 480 (1991). Thus, we conclude that Employer met its burden of proving that Claimant's refusal to work mandatory overtime rose to the level of willful misconduct.

█ Our inquiry into the matter, however, does not end here. Once an employer establishes a *prima facie* case of willful misconduct, the burden shifts to the claimant to prove that under the facts of the particular case, his conduct does not constitute willful misconduct. *Brady v. Unemployment Compensation Board of Review*, 115 Commonwealth Ct. 221, 115 Pa.Cmwlth. 221, 539 A.2d 936 (1988). The Board concluded in the

---

**2.** Our scope of review is limited to a determination of whether an error of law was committed, whether constitutional rights were violated or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704.

present case that Claimant was not disqualified from receiving unemployment compensation benefits because Employer discharged Claimant but did not terminate the employment of his co-worker.

This court has held that the essence of disparate treatment is not only whether unlawful discrimination has occurred[3] but also whether similarly situated people are treated differently, based upon improper criteria. *American Racing.* In *American Racing,* an employer asked the claimant, a warehouse manager, to attend a five-day "sales blitz" in a neighboring state. The claimant refused, and his employer dismissed him for insubordination. Although the referee denied benefits on the basis of willful misconduct, the Board reversed finding, *inter alia,* that the claimant was the subject of disparate treatment because he was discharged while two other employees were not discharged for the same conduct. On appeal to this court, we reversed. Specifically, we held that (1) the claimant, as manager of the warehouse, could not be considered similarly situated to the other two non-managerial employees whom the employer did not terminate; and (2) the employer did not treat the claimant differently based on any improper criterion. Instead, Employer based its decision on the claimant's level of responsibility as manager and on business necessity, both of which the court deemed proper.

The court again addressed this issue in *Remcon Plastics, Inc. v. Unemployment Compensation Board of Review,* —— Pa.Commonwealth Ct. ——, 651 A.2d 671 (1994). The claimant in that case was a general laborer who had a fight with a fellow employee, also a laborer. Although the claimant was discharged as a result of the altercation, the co-worker's employment was unaffected. A referee granted benefits, but the Board reversed on the basis of disparate treatment. On appeal to this court, we affirmed, holding that the claimant and his co-worker were similarly situated and the employer offered no evidence of proper criteria, such as business necessity, to justify the disparate treatment.

Here, Employer argues that the Board, in reaching its conclusion, failed to take into consideration each employee's work record. According to Employer, Claimant's co-worker worked for Employer for over twenty-five years, had a spotless record and received awards for his conduct as an employee. Claimant, on the other hand, worked for Employer for only eighteen months and had received prior warnings about his conduct at work. Employer asserts that while it is clear that it could have terminated either employee for his willful refusal to work mandatory overtime, Employer's consideration of the co-worker's exemplary work record and its decision to impose disciplinary sanctions short of termination were both reasonable and appropriate. We agree.

The record reveals that during Claimant's eighteen months of employment, he committed three violations of company policy. In January 1994, Claimant received an oral warning for refusing to cooperate with his group leader. He received a written warning on May 6, 1994, for throwing a heavy test bar and metal tongs across the plant mill. On May 10, 1994, Claimant committed his third and final violation when he refused to work mandatory overtime without providing any justification. Claimant does not dispute that any of these events occurred.

Despite the fact that both Claimant and his co-worker performed the same type of job duties and both refused to work mandatory overtime, it is clear to this court that these employees were not similarly situated because of their differing work records. Moreover, our review of the record indicates that Employer did not base its decision on any

---

3. The genesis of disparate treatment cases is found in *Woodson v. Unemployment Compensation Board of Review,* 461 Pa. 439, 336 A.2d 867 (1975), where an employer discharged black employees for excessive absenteeism and tardiness, while not firing white employees who had similar attendance records. Based on the facts presented, our Supreme Court determined that the employer required one standard of conduct of its black employees and another standard of conduct of its white employees. The Court explained that it could not sanction the Bureau's acceptance of this practice and that the use of such a standard to determine entitlement to unemployment compensation benefits constituted state action based on racially discriminatory policies. The Court therefore concluded that the black employees were not disqualified from receiving benefits under Section 402(e) of the Law due to willful misconduct.

improper criterion, such as unlawful discrimination. We therefore conclude that under the facts of this case, Employer was justified in its disparate treatment of Claimant and his co-worker.

Accordingly, we reverse the Board's order.

### ORDER

AND NOW, September 13, 1995, we reverse the order of the Unemployment Compensation Board of Review, dated November 7, 1994.