## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Colleen Marie Saxton, | : | |
| Petitioner | : | |
| | : | |
| v. | : | |
| | : | |
| Unemployment Compensation | : | |
| Board of Review, | : | No. 515 C.D. 2017 |
| Respondent | : | Submitted: October 13, 2017 |


BEFORE:   HONORABLE ROBERT SIMPSON, Judge
          HONORABLE ANNE E. COVEY, Judge
          HONORABLE JAMES GARDNER COLINS, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION BY
JUDGE COVEY                              FILED: January 5, 2018


Colleen Marie Saxton (Claimant) petitions this Court, pro se, for review of the Unemployment Compensation (UC) Board of Review's (UCBR) February 27, 2017 order affirming the Referee's decision denying her UC benefits under Section 402(e) of the UC Law (Law).[1]  The sole issue before the Court is whether the UCBR erred by concluding that Claimant committed willful misconduct.[2]  After review, we affirm.

---

[1] Act of December 5, 1936, Second Ex.Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e) (referring to willful misconduct).

[2] Claimant's Statement of Questions Involved lists five issues: (1) whether Employer met its burden of proving willful misconduct; (2) whether there was substantial evidence of willful misconduct; (3) whether the UCBR relied on hearsay evidence; (4) whether Employer properly investigated Claimant's conduct; and, (5) whether Employer's employees were permitted to work at home.  *See* Claimant Br. at 7-8.  Because these issues are subsumed in the analysis of whether the UCBR erred by concluding that Claimant committed willful misconduct, we have combined the issues herein.

Claimant was employed by Redstone Highlands SeniorCare (Employer) as a full-time registered weekend nurse beginning October 16, 2006. Employer's Employee Conduct Guidelines (Policy) specified that misconduct including "falsifying records, reports or information" and "dishonesty, including but not limited to deception, fraud, lying, cheating or theft," would result in "immediate termination of employment." Certified Record (C.R.) Item 11, Notes of Testimony, November 10, 2016 (N.T.) at Employer Ex. 7A at 2. On October 8, 2009, Claimant signed an acknowledgement that she understood and agreed to the Policy. N.T. Employer Ex. 6. On or about August 14, 2016, Employer discharged Claimant for dishonesty and records falsification.

Claimant applied for UC benefits. On September 14, 2016, the Greensburg UC Service Center determined that Claimant was ineligible for UC benefits because the actions that led to her discharge constituted willful misconduct. Claimant appealed, and a Referee hearing was held on November 10, 2016. On November 30, 2016, the Referee affirmed the UC Service Center's determination. Claimant appealed to the UCBR and requested a remand hearing on the basis that she was poorly represented at the Referee hearing. On February 27, 2017, the UCBR adopted the Referee's findings and conclusions, affirmed the Referee's decision, and denied Claimant's remand hearing request. Claimant appealed to this Court.[3]

Claimant argues that Employer failed to prove that her discharge was due to willful misconduct. This Court disagrees.

> Section 402(e) of the Law provides that an employee is ineligible for [UC] benefits when h[er] unemployment is due to discharge from work for willful misconduct connected to h[er] work. The employer bears the burden of proving

---

[3] "Our scope of review is limited to determining whether constitutional rights were violated, whether an error of law was committed, or whether the findings of fact were unsupported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704." *Turgeon v. Unemployment Comp. Bd. of Review*, 64 A.3d 729, 731 n.3 (Pa. Cmwlth. 2013).

willful misconduct in an unemployment compensation case. Willful misconduct has been defined as (1) an act of wanton or willful disregard of the employer's interest; (2) a deliberate violation of the employer's rules; (3) a disregard of standards of behavior which the employer has a right to expect of an employee; or (4) negligence indicating an intentional disregard of the employer's interest or a disregard of the employee's duties and obligations to the employer.

*Dep't of Transp. v. Unemployment Comp. Bd. of Review*, 755 A.2d 744, 747 n.4 (Pa. Cmwlth. 2000) (citation omitted). "If the employer satisfies its burden, the burden shifts to the employee to show that . . . she had good cause for . . . her conduct. 'A claimant has good cause if . . . her actions are justifiable and reasonable under the circumstances.'" *Grand Sport Auto Body v. Unemployment Comp. Bd. of Review*, 55 A.3d 186, 190 (Pa. Cmwlth. 2012) (citation omitted) (quoting *Docherty v. Unemployment Comp. Bd. of Review*, 898 A.2d 1205, 1208-09 (Pa. Cmwlth. 2006)). Ultimately, "[t]he question of whether conduct rises to the level of willful misconduct is a question of law to be determined by this Court." *Scott v. Unemployment Comp. Bd. of Review*, 105 A.3d 839, 844 (Pa. Cmwlth. 2014).

At the Referee hearing, Employer's Nursing Director and Claimant's direct supervisor Beth Kohler (Kohler) explained that Employer's Policy reflects its zero tolerance for dishonesty and records falsification. Kohler further described Employer's timekeeping system, whereby, employees swipe their badges to record their work hours. If an employee does not have her badge for any reason, the employee is required, for compensation purposes, to complete and submit Payroll Exception Reports (Green Sheets) explaining why she did not use her badge to record her work time.[4] *See* N.T. at 20, 23; *see also* N.T. Claimant Ex. 1; N.T. Employer Exs. 4-5. Kohler also testified that Employer's nurses, including Claimant, were required to complete self-guided, computer-based PointClickCare (PCC) training using

---

[4] Green Sheets are also used to record when unpaid meal times were not taken as scheduled, and for bereavement and jury duty time off. *See* N.T. Claimant Ex. 1; N.T. Employer Exs. 4-5.

3

Employer's computers during work hours or after scheduled work hours, but before swiping out. *See* N.T. at 19. Kohler stated that Employer did not authorize the nurses to complete PCC training at home. *See* N.T. at 12, 22.

Kohler recounted that Claimant's employment was terminated because she signed and submitted Green Sheets reflecting that she completed PCC training from 8:00 a.m. until 1:00 p.m. on August 10, 2016, *see* N.T. Employer Ex. 4, and from 10:00 a.m. until 3:30 p.m. on August 12, 2016, *see* N.T. Employer Ex. 5. However, Employer's computer records revealed that Claimant did not initiate the computer PCC program on August 10, 2016 and was not logged into the PCC for the amount of time Claimant submitted for August 12, 2016.

The August 10, 2016 Green Sheet contains Claimant's signature, and reflects that she "DID NOT USE PHOTO IDENTIFICATION BADGE TO RECORD TIME REPORTING TO WORK AND/OR ENDING WORK" for the following reason: "Did PCC on computer. Did not punch in." N.T. Employer Ex. 4. The August 12, 2016 Green Sheet contains Claimant's signature, and states that she "DID NOT USE PHOTO IDENTIFICATION BADGE TO RECORD TIME REPORTING TO WORK AND/OR ENDING WORK" for the following reason: "PCC on computer." N.T. Employer Ex. 5. Both Green Sheets were signed by Employer's daylight Supervisor Rita Treager (Treager).

Kohler clarified that Green Sheets were not to be used by the nurses to report PCC hours. *See* N.T. at 19. Kohler met with Claimant on August 23, 2016 to discuss her Policy violations. *See* N.T. at 9. Kohler described that, when confronted, Claimant responded that she completed the PCC modules at home, and told Kohler that "if it is not correct, don't pay me for that time." N.T. at 21.

Employer's Executive Director Megan Henson (Henson) confirmed that the nurses were not permitted to conduct the PCC training from home. *See* N.T. at 29, 31. She also declared that Employer discharged Claimant "[f]or dishonesty and falsification of records." N.T. at 24; *see also* N.T. at 26. Henson recalled that when

4

Treager asked her whether Claimant was permitted to conduct her PCC training from home, Henson contacted Claimant who said she could not remember the dates for which she completed the Green Sheets, but that she did work on the PCC from home. *See* N.T. at 24-25, 32. Henson pronounced: "Then [Claimant] said what, now I'm not going to get paid for these times? And I said no, I just need to verify the times and dates." N.T. at 25.

Henson described that she investigated Claimant's PCC time by pulling a PCC report from the computer system that specified what PCC modules Claimant completed on which dates, and Henson hand-recorded the dates on the PCC Training Module Agenda sheet.[5] *See* N.T. at 25-29. Upon her comparison to Claimant's Green Sheets, Henson discovered that Claimant did not participate in any PCC training on August 10, 2016 and only logged in for 2.6 hours on August 12, 2016.[6] *See* N.T. at 25,

---

[5] Claimant contends that Henson's documentation of Claimant's PCC computer log-in hours was hearsay and admitted over her counsel's objection. Certainly, an out-of-court statement offered to prove the truth of the matter asserted is hearsay. Pa.R.E. 801(c). The law is well-settled that "[h]earsay evidence, *properly objected to*, is not competent evidence to support a finding of the [UCBR]." *Walker v. Unemployment Comp. Bd. of Review*, 367 A.2d 366, 370 (Pa. Cmwlth. 1976). However, Section 6108(b) of the Uniform Business Records as Evidence Act (Act), provides an exception to the hearsay rule for records where a qualified witness testifies regarding its identity, and its timing and mode of preparation. 42 Pa.C.S. § 6108(b). "Whether a document should be admitted under the business records exception to the hearsay rule is within the discretion of the trier of fact provided that his or her discretion is exercised within the dictates of Section 6108 [of the Act]." *Toth v. Workers' Comp. Appeal Bd. (USX Corp.)*, 737 A.2d 838, 841 (Pa. Cmwlth. 1999).

Here, the Referee overruled Claimant's hearsay objection relative to Henson's notes and the computer log that reflected the dates on which Claimant completed PCC modules (*i.e.*, July 18, August 9 and August 12, 2016). *See* N.T. at 14-15, 27, 39; *see also* N.T. Employer Exs. 1-2. Because Henson testified relative to the identity, and the timing and mode of their preparation, and was cross-examined concerning the same, the Referee did not abuse her discretion by admitting them into evidence under the business records exception to the hearsay rule.

[6] According to Henson's handwritten notes that she placed on a PCC Training Module Agenda sheet (a form Employer's nurses received relative to what PCC modules must be completed and when), Claimant was logged into PCC for 60 minutes on July 18, 2016, for 288 minutes on August 9, 2016, and for 158 minutes on August 12, 2016. *See* N.T. at 13, 25; *see also* N.T. Employer Exs. 1-2.

27-28, 35; *see also* N.T. Employer Exs. 1-2. These findings were in stark contrast to what Claimant informed Henson. Henson met with Kohler and Claimant on August 23, 2016 to discuss Claimant's Policy violations. *See* N.T. at 25.

Employer's Assistant Vice President of Human Resources Kathie Brean (Brean) confirmed that nurses were not authorized to complete their PCC training at home. *See* N.T. at 37. She further explained that employees were supposed to swipe their badges at work and, if they did so, there would be no need to complete the Green Sheets to show their work hours and be paid accordingly.

Claimant testified that Tiffany Height (Height),[7] the person in charge of the computer component of PCC training, informed her that the training could be completed from home, and provided Claimant with an email that allowed her to do so.[8] *See* N.T. at 39-40, 46. Claimant also asserted that her former supervisor Donna Lincoski (Lincoski) instructed her to report her PCC training hours on Green Sheets, even when she was swiped in at work, despite Claimant's impression that the nurses would not be paid for the PCC training.[9] *See* N.T. at 40, 43, 45-46.

Claimant admitted to signing the Policy acknowledgment, and that she would expect to be discharged for dishonesty. *See* N.T. at 40-41, 51. However, Claimant maintained that although she completed two Green Sheets for two PCC training days, she did not complete or sign the August 10, and 12, 2016 Green Sheets

---

[7] Henson represented that Height is a quality nurse, not a supervisor. *See* N.T. at 31.

[8] Employer's counsel objected to this testimony as hearsay, which objection the Referee sustained. *See* N.T. at 39-40. Employer's counsel further represented: "Tiffany is not an agent of [Employer][.]" N.T. at 40.

[9] Claimant described that one Green Sheet was for PCC training at work, and the other was for PCC training from home. *See* N.T. at 44. Notably, after first testifying that she was not paid for PCC training, *see* N.T. at 43, when Claimant was later asked if she was paid for PCC training she did at work, she responded: "I would assume yes." N.T. at 53.

upon which Employer based her discharge.[10]  *See* N.T. at 41-44; *see also* N.T. Claimant Ex. 2.  Claimant explained that she did not intentionally provide incorrect or false information on her Green Sheets, but was tired when she completed the Green Sheet for her at-home training at 1:00 a.m. after a 19-hour shift, and since she did not attend the PCC meeting, she was confused about the Green Sheet policy and relied upon Lincoski's instruction to submit Green Sheets for PCC training.  *See* N.T. at 42-43, 45, 53, 55.  She recounted that when Henson contacted her about the Green Sheets, she told Henson relative to the at-home time that "if the [Green S]heet is wrong don't pay me . . . we're not supposed to be paid."  N.T. at 46; *see also* N.T. at 49-50.

Claimant stated that Employer never permitted her to offer her side of the story, and, since Employer was in financial distress, she felt her job may be in jeopardy before the August 2016 Green Sheets incident arose.  *See* N.T. at 49.  Claimant further reported that Employer's Policy is not zero-tolerance since, when she had an error (an incorrect date) on a previous Green Sheet, she was permitted to correct it rather than

---

[10] Claimant contends that the Green Sheets were unauthenticated hearsay admitted into evidence over her counsel's objection and that they were not original documents.  At the hearing, Claimant asserted, and her mother Phyllis Cratty confirmed, that the signatures on the subject Green Sheets were not hers.  *See* N.T. at 41-44, 56-57; *see also* N.T. Claimant Ex. 2.  The Referee overruled Claimant's objections because Employer received the Green Sheets from Claimant and maintained them in the ordinary course of Employer's business as business records used to calculate Claimant's pay.  *See* N.T. at 4, 29; *see also* N.T. Employer Exs. 4-5.  Claimant confirmed in her brief to this Court that, at some point, she placed two Green Sheets in Treager's mailbox.  Claimant Br. at 23.  Under the circumstances, the Referee did not abuse her discretion by admitting the August 10, and 12, 2016 Green Sheets into evidence as business records.

Moreover, "[a] duplicate is admissible to the same extent as the original unless a genuine question is raised about the original's authenticity or the circumstances make it unfair to admit the duplicate."  Pa.R.E. 1003.  Under circumstances in which the UCBR did not find credible Claimant's assertions that she did not sign the Green Sheets upon which Employer's case is based, there is not a "genuine question" relative to their authenticity and, thus, the Referee did not err by admitting copies.

being disciplined.[11] *See* N.T. at 47, 52-53. Claimant claimed that Employer has never disciplined anyone for Green Sheet errors. *See* N.T. at 47.

Based upon the above-stated evidence, the UCBR adopted the Referee's findings, in relevant part:

> 2. [Employer] has a policy which prohibits the falsification of record[s], reports, or information[.]
>
> 3. [Employer] uses a timecard system where employees swipe badges to record the time [the employees] are working.
>
> 4. If an employee forgets [his/her] badge, loses [a] badge, or has some other issue with punching in on the timeclock, the employee must complete a [Green Sheet].
>
> 5. [Employer] does not grant permission for employees to work from home and all computer[-]based training and other work must be completed at [Employer's] facility.
>
> 6. On August 10, 2016 and August 12, 2016, [Claimant] submitted [Green Sheets] which both indicated she had completed computer[-]based training on those days.
>
> 7. [Claimant] did not punch in using [Employer's] standard timekeeping system on August 10, 2016 or August 12, 2016.
>
> 8. [Employer's] computer system did not show that [Claimant] completed the computer[-]based training on August 10, 2016 and had only completed approximately half the time that she had charged [on the Green Sheet] on August 12, 2016.

Referee Dec. at 2. The UCBR also adopted the Referee's conclusion that Employer met its burden of proving that Employer had a Policy prohibiting records falsification, Claimant was aware of the Policy, and Claimant violated the Policy:

---

[11] Claimant submitted with her brief to this Court three statements by co-workers to support her claims that she was permitted to conduct PCC training at home, and that Employer does not automatically discharge employees who make mistakes on Green Sheets. As a matter of law, this Court is prohibited from considering extra-record evidence on appeal. *See* 34 Pa. Code § 101.106; *Umedman v. Unemployment Comp. Bd. of Review*, 52 A.3d 558 (Pa. Cmwlth. 2012). Accordingly, this Court did not consider those statements in its decision herein.

> [Claimant] submitted documentation to [Employer] asking to be paid for working on August 10, 2016 while in the computer[-]based training and again for hours worked on August 12, 2016 completing computer[-]based training. Upon [Employer] checking the computer[-]based learning system, [it] discovered that [Claimant] did not, in fact, log into the computer[-]based training on August 10, 2016 at all and had only been logged into the system for approximately half the time that she had charged on the [Green Sheet] for August 12, 2016. While [Claimant] argued . . . that the [Green Sheet] was used for [] purposes other than to request to be paid, the Referee finds that [Employer's] testimony that all employees must use the electronic timekeeping system where employees swipe their individual time badges is the standard procedure that employees must follow when 'clocking in or out.'

Referee Dec. at 2.

> The law is well-established:

> [T]he [UCBR] is the ultimate fact-finder in [UC] matters and is empowered to resolve all conflicts in evidence, witness credibility, and weight accorded the evidence. It is irrelevant whether the record contains evidence to support findings other than those made by the fact-finder; the critical inquiry is whether there is evidence to support the findings actually made. Where substantial evidence supports the [UCBR's] findings, they are conclusive on appeal.[12]

*Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338, 342 (Pa. Cmwlth. 2008) (citations omitted). Here, the UCBR expressly found credible Employer's testimony and evidence, and concluded that Claimant "deliberately

---

[12] This Court has explained:

> Substantial evidence is relevant evidence upon which a reasonable mind could base a conclusion. In deciding whether there is substantial evidence to support the [UCBR's] findings, this Court must examine the testimony in the light most favorable to the prevailing party, . . . giving that party the benefit of any inferences which can logically and reasonably be drawn from the evidence.

*Sanders v. Unemployment Comp. Bd. of Review*, 739 A.2d 616, 618 (Pa. Cmwlth. 1999).

9

violated [Employer's P]olicy against engaging in dishonesty."  C.R. Item 16, UCBR Order.

> The issue of whether good cause exists is a factual one for the [UCBR] to resolve.  *Wideman v. Unemployment Comp*[.] *B*[*d.*] *of Review, . . .* 505 A.2d 364, 368 ([Pa. Cmwlth.] 1986).  'The [UCBR], as ultimate fact finder, determines the weight and credibility of the evidence and is free to reject even uncontradicted testimony.'  *Id.*  Here, the [UCBR] adopted the [R]eferee's finding that Claimant's testimony . . . was insufficient to establish good cause.  It was within the exclusive province of the [UCBR] to make this finding and Claimant cannot impugn it on appeal.

*Ellis v. Unemployment Comp. Bd. of Review*, 59 A.3d 1159, 1164 (Pa. Cmwlth. 2013).  The UCBR in this case also adopted the Referee's conclusion that "[Claimant] has failed to provide any good cause for violating [Employer's P]olicy, or to show that the [P]olicy was unreasonable in the given circumstance[.]"  Referee Dec. at 2.

Based upon this Court's thorough review of the record, there is substantial evidence to support the UCBR's findings and conclusion that Claimant submitted paperwork to Employer to be paid for hours on August 10, and 12, 2016 that she did not work, in violation of Employer's Policy prohibiting dishonesty and/or records falsification.  Moreover, the UCBR did not deem credible Claimant's pronouncements that she was authorized to conduct her PCC training from home, that she was not properly advised regarding Employer's Green Sheet policy, that she was not being paid for PCC training hours, that Employer's Policy was not uniformly enforced,[13] that she

---

[13] Although disparate treatment is an affirmative defense available to a claimant who has engaged in willful misconduct, "'[t]he mere fact that one employee is discharged for willful misconduct and others are not discharged for the same conduct does not establish disparate treatment.' *Am*[.] *Racing Equip*[.]*, Inc. v. Unemployment Comp*[.] *B*[*d.*] *of Review, . . .* 601 A.2d 480, 483 ([Pa. Cmwlth.] 1991)[.]" *Geisinger Health Plan v. Unemployment Comp. Bd. of Review*, 964 A.2d 970, 975 (Pa. Cmwlth. 2009).  Because Claimant in this case presented no credible evidence of similar conduct by other employees that Employer disciplined in a disparate manner, this defense is not available to Claimant.

may have made a mistake on her Green Sheets after working a 19-hour shift, and that someone forged her signature on the August 10, and 12, 2016 Green Sheets. By continuing to proffer this myriad of explanations, Claimant is essentially asking this Court to re-weigh the evidence, which we cannot do. *Ellis*. Accordingly, there was no credible record evidence that Claimant had good cause for violating Employer's Policy.

Viewing the evidence in the light most favorable to Employer, as we must, this Court holds that the UCBR properly concluded that Claimant committed willful misconduct and, thus, she is not eligible for UC benefits under Section 402(e) of the Law.

For all of the above reasons, the UCBR's order is affirmed.


_____
ANNE E. COVEY, Judge

11

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Colleen Marie Saxton,        :
              Petitioner    :
       :
       v.              :
       :
Unemployment Compensation    :
Board of Review,            :    No. 515 C.D. 2017
            Respondent    :

### O R D E R

AND NOW, this 5th day of January, 2018, the Unemployment Compensation Board of Review's February 27, 2017 order is affirmed.

_____
ANNE E. COVEY, Judge