# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Fabrice Afata Botikotiko, | : | |
| Petitioner | : | |
| | : | |
| v. | : | No. 873 C.D. 2018 |
| | : | Submitted: November 9, 2018 |
| Unemployment Compensation | : | |
| Board of Review, | : | |
| Respondent | : | |

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
HONORABLE P. KEVIN BROBSON, Judge
HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**                    **FILED: January 4, 2019**

Fabrice Afata Botikotiko (Claimant), representing himself, petitions for review from an order of the Unemployment Compensation Board of Review (Board) that denied his claim for unemployment compensation (UC) benefits under Section 402(e) of the UC Law (Law) (relating to willful misconduct).[1]  Claimant challenges several of the Board's findings as well as the Board's determination that he committed willful misconduct.  He also argues his employer, Arconic/Alcoa (Employer), subjected him to disparate treatment in the enforcement of its policies.  Additionally, Claimant asserts he did not receive a fair hearing before the referee in light of the fact that a language barrier existed because English is not his first language.  Upon review, we affirm.

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, as amended, 43 P.S. §802(e).

# I. Background

Claimant worked for Employer from January 2016 until August 2017 as a full-time material handler and assistant machine operator. After his separation from employment, Claimant applied for UC benefits. The UC service center denied benefits under Section 402(e) of the Law. Claimant appealed. A hearing ensued before a referee.

After the hearing, the referee issued a decision that contained the following findings. Employer has a progressive disciplinary policy. Claimant was aware of that policy. Pursuant to Employer's progressive disciplinary policy, an employee will receive a verbal warning, a written minor warning, a written major warning, a written major warning with a three-day suspension, and a written major warning with a five-day suspension pending termination.

Employer also has a cell phone usage policy. Claimant was aware of that policy. Pursuant to Employer's cell phone policy, a cell phone used for non-company business is restricted to designated areas during normal break times, including cell phone charging. Non-company cell phones must be turned off when an employee is not on break and in a designated cell phone area. While at a work station or a job site (or anywhere else in the plant where the user is responsible for operating equipment), use of a non-company cell phone for emergency calls is not acceptable. Cell phones observed outside a purse, a backpack, a pocket, or a lunchbox are assumed in use and, therefore, in violation of the policy.

On May 24, 2016, Claimant received a verbal warning for a safety violation. Two days later, he received a written minor warning for a cell phone

2

policy violation when his cell phone went off during an employee meeting. About nine months later, Claimant received a written major warning for a performance issue.

Thereafter, in July 2017, Claimant received a written major warning with a three-day suspension for a performance issue and for a cell phone policy violation when Claimant's cell phone went off three times during a meeting. Claimant was aware his job was in jeopardy.

In late-July 2017, after Claimant's lunch break, a meeting was held with employees, including Claimant, in the cafeteria, a designated cell phone use area. Employer's cell phone use policy applied during the staff meeting, even though it was held in the cafeteria, because the break period ended and the meeting occurred during work hours. As the meeting ended, Claimant's cell phone rang, and he answered it. The shift coordinator witnessed Claimant answer his cell phone and talk on the cell phone during work hours at the end of the employee meeting. Claimant received a written major warning with a five-day suspension pending discharge for the cell phone policy violation. About a month later, after Employer completed its necessary procedures, Employer discharged Claimant for violating its cell phone policy.

Based on these findings, the referee made the following determinations:

> [C]laimant was discharged for violating [E]mployer's cell phone policy. [E]mployer's cell phone policy, of which [C]laimant was aware, provides that employees

3

must have their cell phones turned off at all times unless on a designated break and in a designated cell phone use area. If the phone goes off or is seen during working hours, it is a violation of the policy. [C]laimant progressed through [E]mployer's disciplinary steps, some of which were for cell phone policy violations and he was aware that his job was in jeopardy. The final incident, which led to [C]laimant's discharge, occurred on July 27, 2017, when [C]laimant answered his cell phone at the end of a staff meeting. …

[C]laimant's reasons for answering his cell phone during working hours are not credible. [C]laimant was aware that he was in a staff meeting on work time. Even though it was in the cafeteria which is a designated cell phone use area, this does not excuse the cell phone from being turned on or for [C]laimant answering it during working hours. [E]mployer has met its burden. Accordingly, [UC] benefits are denied.

Referee's Dec., 11/6/17, at 3.

Claimant appealed, and the Board affirmed, adopting and incorporating the referee's findings and conclusions. Further, the Board provided additional reasons for denying Claimant UC benefits under Section 402(e) of the Law. Among other things, the Board stated:

At the hearing, [E]mployer established that [C]laimant deliberately violated [E]mployer's [cell phone] policy despite prior warnings. Therefore, the burden shifted to [C]laimant to establish good cause for his rule violation. The Referee rejected his explanation as not credible. Therefore, [C]laimant failed to show good cause for his violations.

Bd. Op., 5/31/18, at 1. Claimant now petitions for review to this Court.

4

## II. Issues

On appeal,[2] Claimant challenges several of the Board's findings as well as the Board's determination that he committed willful misconduct. He also argues Employer subjected him to disparate treatment in the enforcement of its policies. Additionally, Claimant contends he did not receive a fair hearing before the referee as a language barrier existed because English is not Claimant's first language.

## III. Discussion

In UC cases, the Board is the ultimate fact-finder and is empowered to resolve all conflicts in evidence, witness credibility, and weight afforded to the evidence. Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review, 949 A.2d 338 (Pa. Cmwlth. 2008). We are bound by the Board's findings so long as the record, taken as a whole, contains substantial evidence to support them. Id. Further, unchallenged findings are conclusive on appeal. Campbell v. Unemployment Comp. Bd. of Review, 694 A.2d 1167 (Pa. Cmwlth. 1997). Additionally, it is irrelevant whether the record contains evidence to support findings other than those made by the Board, as fact-finder; the critical inquiry is whether there is evidence to support the findings actually made. Ductmate. Employer, as the prevailing party below, is entitled to the benefit of all reasonable inferences drawn from the evidence. Id.

---

[2] Our review is limited to determining whether the Board's necessary findings of fact were supported by substantial evidence and whether the Board erred as a matter of law or violated constitutional rights. Johns v. Unemployment Comp. Bd. of Review, 87 A.3d 1006 (Pa. Cmwlth. 2014).

## A. Board's Findings

Claimant challenges the Board's Findings of Fact Nos. 10-14, which state:

> 10. The cell phone use policy applied during the staff meeting, even though it was being held in the cafeteria because the break time had ended and the meeting was held during working hours.
>
> 11. On July 27, 2017, as the meeting ended, [C]laimant's cell phone went off and he answered it.
>
> 12. On July 27, 2017, the shift coordinator personally witnessed [C]laimant answering his cell phone and speaking on it during working hours at the end of the employee meeting.
>
> 13. [C]laimant was given a written major warning with a 5-day suspension pending discharge for the cell phone policy violation on July 27, 2017.
>
> 14. On August 29, 2017, after [E]mployer completed all the necessary procedures, [C]laimant was discharged for violating [E]mployer's cell phone policy.

Referee's Op., Findings of Fact (F.F.) Nos. 10-14.

Contrary to Claimant's assertions, the record amply supports each of the challenged findings. Referee's Hr'g, Notes of Testimony (N.T.), 10/30/17, at 12, 16-19, 21 (testimony of Jason Fisher, Employer's C-Crew Shift Coordinator and Claimant's Supervisor); Ex. E-1 ("Policy and Procedure"; "Mobile Technology Devices"). Therefore, we reject Claimant's various challenges to Findings of Fact Nos. 10-14, which are based largely on Claimant's version of the facts rather than the facts as found by the Board.

6

## B. Willful Misconduct

Claimant next challenges the Board's determination that he committed willful misconduct. He asserts his violation of Employer's cell phone policy "occurred [sic] in confusing environment and mitigating circumstances, so the UC Law 402(e) [sic] is not applicable for this case." Pet'r's Br. at 12.

Section 402(e) of the Law states that an employee shall be ineligible for compensation for any week in which his unemployment is a result of willful misconduct connected to his work. 43 P.S. §802(e). Willful misconduct is defined as: (1) the wanton and willful disregard of an employer's interests; (2) the deliberate violation of an employer's rules; (3) the disregard of the standards of behavior that an employer can rightfully expect from an employee; or (4) negligence showing an intentional disregard of the employer's interests or the employee's duties and obligations to the employer. Allen v. Unemployment Comp. Bd. of Review, 189 A.3d 2018 (Pa. Cmwlth. 2018).

The employer bears the initial burden of establishing a claimant engaged in willful misconduct. Id. Whether a claimant's actions constitute willful misconduct is a question of law fully reviewable on appeal. Id.

Once an employer meets its burden, the burden shifts to the employee to prove he had good cause for his actions. Guthrie v. Unemployment Comp. Bd. of Review, 738 A.2d 518 (Pa. Cmwlth. 1999). An employee establishes good cause where his actions are justified or reasonable under the circumstances. Docherty v. Unemployment Comp. Bd. of Review, 898 A.2d 1205 (Pa. Cmwlth. 2006).

7

In addition,

> [a]n employer seeking to prove willful misconduct by a policy violation must demonstrate the existence of the policy, its reasonableness, and its violation. The employer must also show that the [claimant] intentionally or deliberately violated the work rule. This Court must determine if the work rule is reasonable in light of all the circumstances and whether a claimant had good cause to violate the work rule.

Klampfer v. Unemployment Comp. Bd. of Review, 182 A.3d 495, 500 (Pa. Cmwlth. 2018) (citations, quotations and emphasis omitted).

Here, Employer established the existence of a progressive disciplinary policy, which consists of: (1) a verbal warning; (2) a written minor warning; (3) a written major warning; (4) a written major warning with a three-day suspension; and (5) a written major warning with a five-day suspension, pending termination. N.T. at 10-11. Claimant was aware of Employer's progressive discipline policy. N.T. at 11.

Further, Jason Fisher, Claimant's Supervisor, testified that Claimant received the following disciplinary actions: (1) a verbal warning for a safety violation, F.F. No. 4; N.T. at 13; (2) a written minor violation for violating Employer's cell phone policy, F.F. No. 5; N.T. at 13; (3) a written major violation for a performance issue, F.F. No. 6; N.T. at 14-15; (4) a written major violation with a three-day suspension for violating Employer's cell phone policy, F.F. No. 7; N.T. at 14-15; and (5) a written major warning with a five-day suspension pending termination for violating Employer's cell phone policy, followed by his

8

termination from employment. F.F. Nos. 13, 14; N.T. at 16, 18. See also Exs. 16-19C.

Although Claimant asserts his final cell phone policy violation was merely a mistake and that the referee erred in failing to consider his policy violations were "out of [his] total control," Pet'r's Br. at 9, the referee and the Board did not credit Claimant's testimony. Rather, the Board expressly determined the rule violation was deliberate, particularly in light of Claimant's recurrent prior violations and Employer's repeated warnings. Bd. Op. at 1; N.T. at 11, 13-16.

In addition, while Claimant attempted to offer various justifications for his final cell phone policy violation, the referee and the Board expressly determined: "[C]laimant's reasons for answering his cell phone during working hours are not credible." Referee's Op. at 3; Bd. Op. at 1. Thus, Claimant did not establish good cause for the policy violation. Bd. Op. at 1.

Further, contrary to Claimant's assertions, the referee and the Board were not required to accept Claimant's version of the facts. Ductmate. And, to the extent Claimant maintains his cell phone use did not violate *the purpose* of Employer's cell phone policy (which is to minimize distractions and prevent accidents and injuries), the Board's supported findings reveal Claimant did, in fact, violate the express terms of the cell phone policy by using his cell phone during work hours while not on a break. Employer's cell phone policy, limiting cell phone usage to designated areas during normal break times, is reasonable.

9

In short, the record supports the Board's findings. In turn, those findings support the Board's ultimate determination that Employer proved Claimant committed willful misconduct.

## C. Disparate Treatment

Claimant next argues Employer engaged in disparate treatment because it terminated Claimant's employment "for reaching the highest disciplinary action despite the fact that there are people who have reached the same step of disciplinary action but kept their jobs till [sic] today." Pet'r's Br. at 8. He further asserts: "Similar violation [sic] committed by other persons are ignored, even on the same day and place in question here." Id. at 11.

Disparate treatment is an affirmative defense by which a claimant who engaged in willful misconduct may still receive benefits. Geisinger Health Plan v. Unemployment Comp. Bd. of Review, 964 A.2d 970 (Pa. Cmwlth. 2009). In order to prove disparate treatment, a claimant must make an initial showing of each of the following: (1) the employer discharged claimant but did not discharge other employees who engaged in similar conduct; (2) the claimant was similarly situated to the other employees who were not discharged; and (3) the employer discharged the employee based on an improper criterion. Id.

Here, in rejecting Claimant's disparate treatment defense, the Board stated: "[C]laimant alludes to discrimination in his testimony. However, [C]laimant failed to establish disparate treatment. Furthermore, [C]laimant had acknowledged that he received prior infractions[.]" Bd. Op. at 1. Based on our

10

review of the record, the Board properly rejected Claimant's disparate treatment defense.

To that end, before the referee, Claimant attempted to argue that other employees used their cell phones on the date Claimant's final policy violation occurred and these employees were not subject to discipline. Contrary to Claimant's assertion, Claimant's Supervisor testified that he did not observe any other employees on their cell phones at that time. N.T. at 22. Further, the referee and the Board did not credit Claimant's testimony.

Nevertheless, even if Claimant is correct that Employer discharged him but did not discharge other employees who engaged in similar conduct, Claimant did not show he was similarly situated to the other employees who were not discharged, or that Employer discharged him based on an improper criterion. Geisinger. Thus, Claimant did not establish the elements of a disparate treatment defense.

### D. Language Barrier

As a final issue, Claimant maintains he "was many times unable to express himself during the hearing, which constitute [sic] a language barrier. Note that english [sic] is [Claimant's] second language." Pet'r's Br. at 12. Responding to this issue, the Board stated:

> [C]laimant comments on appeal that there was a language barrier and request[s] a new hearing on this basis. [C]laimant was apprised on the notice of hearing to contact the Referee's office if he needed an interpreter.

11

He did not do so. Accordingly, the Board determines he is not entitled to a new hearing.

Bd. Op. at 1. The record supports the Board's determination.

More particularly, the Referee's Notice of Hearing mailed to Claimant two weeks before the hearing, states:

> If you … need an interpreter for your own language other than English, ***contact the Referee's office listed on this notice as soon as possible***. The Board is responsible to provide an appropriate device or qualified interpreter whose credentials are certified for quasi[-]judicial proceedings. Also, the Board covers the costs required to provide this assistance.

Certified Record, Item #9 at 2 (emphasis in original). Here, there is no indication that Claimant contacted the referee's office to request an interpreter prior to the hearing. Indeed, Claimant does not assert he did so.

Further, Claimant fully participated in the referee's hearing, and he did not raise any issue regarding the need for an interpreter. Instead, toward the end of the hearing, the following exchange occurred:

> [Employer's Representative] I'm sorry. Is [C]laimant recording this [h]earing on his cell phone?
>
> [Claimant] Excuse me?
>
> [Employer's Representative] Is [C]laimant recording this -- this [h]earing on his cell phone?
>
> [Claimant] No, why?
>
> [Employer's Representative] He has it out.

[Claimant]  No, that's for my -- my translation.  I use this for translation for some words.  Especially...

[Referee]    I -- I -- I would have been happy to have gotten you a translator.  All you would have...

[Claimant]  Okay.

[Referee] … needed to do was request that.  I would just say that you may not record any -- any of us without notifying us, if that is the case.

N.T. at 28-29.

Claimant offered no response to the referee's statement that an interpreter would have been provided if requested.  N.T. at 29.  Additionally, our review of the transcript in its entirety does not reveal Claimant experienced any communication difficulties as a result of a language barrier.  Thus, despite generally asserting a language barrier existed and hindered his ability to communicate, Claimant offers no specific examples as to how any purported language difficulty obstructed his ability to fully present his case before the referee.  Thus, Claimant's argument fails.

For all the foregoing reasons, we affirm.[3]

_____

ROBERT SIMPSON, Judge

_____

[3] Claimant also argues that Employer violated his rights under the Fifth Amendment to the U.S. Constitution by, among other things, punishing him twice for the same violation.  However, Claimant did not raise this issue before the referee or in his appeal to the Board.  Thus, it is waived.  Chapman v. Unemployment Comp. Bd. of Review, 20 A.3d 603 (Pa. Cmwlth. 2011) (issues not raised before the referee or the Board are waived for purposes of appeal and will not be addressed for the first time by this Court).

## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Fabrice Afata Botikotiko,          :
                Petitioner      :
                              :
         v.                 :     No. 873 C.D. 2018
                              :
Unemployment Compensation    :
Board of Review,               :
              Respondent    :

## **O R D E R**

**AND NOW**, this 4th day of January, 2019, the order of the Unemployment Compensation Board of Review is **AFFIRMED**.

 

                              _____
                              ROBERT SIMPSON, Judge