IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patricia G. Fritz, :
               Petitioner :
                :
      v. : No. 1034 C.D. 2019
                : SUBMITTED: February 7, 2020
Unemployment Compensation :
Board of Review, :
               Respondent :

BEFORE:   HONORABLE P. KEVIN BROBSON, Judge
              HONORABLE PATRICIA A. McCULLOUGH, Judge
              HONORABLE ELLEN CEISLER, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CEISLER                           FILED: May 4, 2020

Patricia G. Fritz (Claimant), *pro se*, petitions for review of an Order of the Unemployment Compensation Board of Review (Board). The Board found Claimant ineligible for unemployment compensation (UC) benefits under Section 402(e) of the Unemployment Compensation Law (UC Law)[1] because her employment was terminated for willful misconduct. After thorough review, we affirm the Board's Order.

## I. Background

From 2010 to 2018, Claimant was employed as Chief Deputy in the Office of the Sheriff of Westmoreland County (Employer). Bd. Dec. & Order, 6/14/19, Finding of Fact (F.F.) No. 1. In August 2018, Claimant and a then-deputy sheriff, Denise Appleby (Deputy Appleby), met with another employee, Deputy Robert

---

[1] Act of December 5, 1936, Second Ex. Sess., P.L. (1937) 2897, *as amended*, 43 P.S. § 802(e). Section 402(e) of the UC Law states that an employee shall be ineligible for UC benefits for any week "[i]n which his unemployment is due to his discharge or temporary suspension from work for willful misconduct connected with his work." *Id.*

Orbin (Deputy Orbin), and his union representative, Corporal Steven Felder (Corporal Felder), concerning Deputy Orbin's use of a work vehicle. The vehicle use issue was resolved quickly and amicably.

Corporal Felder, in his capacity as the union president, then began a discussion with Claimant concerning her implementation of a policy requiring medical excuses for absence from work in certain situations.[2] F.F. Nos. 5-6. Corporal Felder challenged the propriety of that requirement. The conversation became heated and Corporal Felder attempted to end the discussion and leave the room. F.F. No. 7.

The parties and witnesses agree that there was a verbal confrontation at the meeting room door, with Corporal Felder insisting the meeting was over and he was leaving, and Claimant as insistently stating the meeting was not over and ordering Corporal Felder to sit back down. Certified Record (C.R.), Item #2 at 4, Notes of Testimony, 1/16/19 (N.T. 1/16) at 13-14, 18-19, 24, 26-27, 29, 32-33, 37-38, 60, 68-69; *see also* Bd. Dec. & Order, 6/14/19 at 3-4. Corporal Felder also admitted he turned as if to return to his seat, but when Claimant also began to turn back toward her seat, he quickly slipped out the door. N.T. 1/16 at 20, 24; *see* F.F. No. 9. Statements concerning details of what happened in the few seconds Claimant and Corporal Felder were at the door, however, vary widely.

According to Corporal Felder, Claimant reached the closed door of the meeting room first and prevented him from leaving by pushing or shoving him back, then poked him in the chest with her forefinger repeatedly while yelling at him to sit back down. N.T. 1/16 at 13-14, 16. Corporal Felder's version of the event was partially corroborated by Deputy Orbin, who stated he saw Claimant holding the

---

[2] If five or more employees were off work on a given day, the policy barred the absence of any other employees that day; anyone calling in sick for that day was therefore required to produce a medical excuse. Notes of Testimony, 1/16/19 at 13, 68.

door closed with one hand and her right foot, while placing her other hand on Felder's chest to prevent his exit. *Id.* at 24, 28. Deputy Orbin, however, did not see whether Claimant pushed Corporal Felder, and although he saw Claimant shaking her finger at Felder, he could not see whether she made any physical contact with Felder's chest with her finger. *Id.* at 24, 28.

According to Claimant, Corporal Felder pulled the door partly open, pinning her between the door and a filing cabinet. *Id.* at 70. She adamantly denied touching him. *Id*. at 70-71. Claimant's version of events is partially corroborated by Sheriff Jonathan Held (Sheriff Held), whose office adjoined the meeting room. Sheriff Held stated he heard raised voices and came out of his office in time to see Claimant apparently pinned between the partly open door and the filing cabinet. *Id.* at 60. Deputy Appleby stated she saw Claimant behind the door at some point, but she witnessed little else because she was looking down during the confrontation. *Id.* at 33, 40-43.

Both Claimant and Corporal Felder were suspended with pay following the incident, and an investigation was conducted. *Id.* at 46-47, 52, 55, 61. Corporal Felder returned to work within a few days. *Id.* at 61. Claimant was not allowed to return, and her employment was terminated in October 2018. *Id.* at 52-53, 62.

Employer's letter of termination to Claimant stated the reasons for her termination were violations of several county policies, which required Claimant to: abide by county procedures and regulations, respect the laws of Pennsylvania to ensure they are administered fairly, refuse to engage in activity that would reflect unfavorably on or discredit the Sheriff's department, and refrain from conduct while an employee that may lead to criminal conviction. *Id.* at 48 & Ex. E-4. The termination letter also identified violations of Employer's workplace violence policy

3

against intimidation, threats, or physical attacks. *Id.* at 49 & Ex. E-5. Finally, the termination letter identified violations of Employer's general rules and regulations, including obedience of orders, reading and understanding written directives, and unbecoming conduct that may reflect negatively on the Sheriff's department. *Id.* at 49-50 & Ex. E-6.

The Westmoreland County District Attorney filed a summary civil complaint of harassment against Claimant as a result of the incident. C.R., Item #2 at 11, 12. She was initially found guilty by a magisterial district judge. *Id.* at 13, 14. She appealed the conviction, *id.* at 16, but the appeal had not been decided by the time of the Board's decision.[3] *See* Notes of Testimony, 5/17/19 (N.T. 5/17) at 4.

Claimant filed a private criminal complaint against Corporal Felder concerning the event. C.R., Item #2 at 10, N.T. 1/16 at 71. The record does not reflect any action by law enforcement or a court concerning that complaint. *See* N.T. 1/16 at 71-72 (Claimant was never informed of any activity regarding her complaint), N.T. 5/17 at 79 (Employer was never informed of any criminal charge by the District Attorney against Corporal Felder).

---

[3] Claimant argues she was acquitted on appeal, and she attaches documentation of the acquittal to her appellate brief. The acquittal is not part of the certified record, however. Accordingly, we may not consider it. *Reginelli v. Boggs*, 181 A.3d 293 (Pa. 2018). We likewise do not consider the various other non-record documents included in the appendix to Claimant's brief. *See id.*

In any event, an acquittal of criminal charges is not determinative of whether the conduct at issue constituted willful misconduct under an employer's policies governing employee conduct. *Louk v. Unemployment Comp. Bd. of Review*, 455 A.2d 766 (Pa. Cmwlth. 1983). Moreover, the record testimony was that the county conducts its own investigations of employee incidents and does not receive or rely on information from the police. Notes of Testimony, 5/17/19 at 79. Accordingly, whether Claimant was subsequently acquitted of a summary criminal charge has little, if any, relevance.

4

Claimant filed a claim for UC benefits as a result of the termination of her employment. She was initially determined to be ineligible for UC benefits because her termination was for willful misconduct. C.R., Item #3.

Claimant appealed to the Referee. C.R., Item #4. After a hearing, the Referee upheld the denial of UC benefits. Ref.'s Dec. & Order, 1/28/19. The Referee stated that it was Employer's burden to establish willful misconduct as the basis for Claimant's discharge. *Id.* at 2. The Referee observed that there was conflicting testimony in the record concerning Claimant's conduct, but found Employer's evidence more credible than Claimant's. *Id.* at 3. The Referee found that Claimant pushed Corporal Felder and poked him with her finger. *Id.*, Finding of Fact No. 9. The Referee concluded Claimant's actions violated Employer's policies and code of ethics and that she failed to show good cause for those violations. *Id.* at 3.

Claimant appealed to the Board, which remanded the matter to the Referee for a further hearing to allow presentation of specified items of additional evidence. C.R., Item #12. Following the remand hearing, the Board affirmed the Referee's determination of ineligibility under Section 402(e) of the Law. *See* Bd. Dec. & Order, 6/14/19.

Resolving credibility issues in favor of Employer, *id.* at 3, the Board found as a fact that Claimant shoved or pushed Corporal Felder, poked him repeatedly with her finger, and yelled at him. F.F. No. 8. The Board found that Employer's workplace violence policy prohibits intimidating conduct, as well as unwanted physical contact, including pushing. F.F. No. 14. Employer's code of ethics requires employees to know and follow Employer's policies and to refrain from any conduct that would reflect unfavorably on Employer or the county. F.F. No. 15. In addition, Employer's policy manual requires employees to obey the law and refrain from any

5

conduct that would bring discredit on themselves or Employer. F.F. No. 16. The Board found that Claimant was familiar with Employer's workplace violence policy, code of ethics, and policy manual. F.F. Nos. 14-16.

Noting that Claimant admitted she ordered Corporal Felder to sit down and then tried to physically prevent him from leaving, the Board found Claimant failed to offer any evidence that she had authority to engage in such conduct toward Corporal Felder when he was acting in his capacity as a union representative. Bd. Dec. & Order, 6/14/19 at 3-4. The Board reasoned that Claimant's questionable order and her admitted initial physical response to Corporal Felder's attempt to leave the meeting, combined with her loss of composure, made even more plausible Corporal Felder's testimony that she shoved and poked him. *Id.* at 4. Like the Referee, the Board concluded that Claimant's conduct violated Employer's workplace violence policy, code of ethics, and policy manual, and that Claimant failed to show good cause for those violations. *Id.* The Board further concluded that Claimant's conduct violated the standards of behavior Employer had a right to expect. *Id.* The Board therefore affirmed the Referee's finding of ineligibility based on willful misconduct. *Id.*

Claimant then petitioned for review by this Court.

## II. Issues

On appeal,[4] Claimant first contends the Board erred as a matter of law by concluding there was substantial evidence that she committed willful misconduct under Section 402(e) of the UC Law. Next, Claimant argues the Board erred by

---

[4] This Court's review of the Board's order is limited to a determination of whether the Board's findings were supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *HPM Consulting v. Unemployment Comp. Bd. of Review*, 185 A.3d 1190 (Pa. Cmwlth. 2018).

accepting as fact the documentary evidence from Sheriff Held and Deputy Appleby, describing what they witnessed of the confrontation between Claimant and Corporal Felder. Finally, Claimant alleges bias by Richard W. Bloomingdale, chair of the Board, by reason of his status as president of the Pennsylvania AFL-CIO.

## III. Discussion

## A. Substantial Evidence of Willful Misconduct

"Willful misconduct" for purposes of UC benefits eligibility is: (1) wanton and willful disregard of the employer's interest; (2) deliberate violation of work rules; (3) disregard of standards of behavior an employer rightfully expects of its employees; or (4) negligence manifesting culpability, wrongful intent, evil design, or intentional and substantial disregard for the employer's interest or the employee's duties and obligations. *Geisinger Health Plan v. Unemployment Comp. Bd. of Review*, 964 A.2d 970 (Pa. Cmwlth. 2009) (*en banc*). Whether specific conduct constitutes willful misconduct is a question of law, which is reviewable by this Court. *Id.*

The employer has the burden of proving willful misconduct. *Id.* If the misconduct consists of violating a work rule, the employer must show that the rule existed, the employee was aware of the rule, and the employee violated the rule. *Id.* This Court examines the evidence in the light most favorable to Employer as the party that prevailed before the Board, giving Employer the benefit of any inferences that can logically and reasonably be drawn from the evidence. *Danielle Viktor, Ltd. v. Dep't of Labor & Indus., Bur. of Emp'r Tax Operations*, 892 A.2d 781 (Pa. 2006).

Claimant argues that the Board erred in finding that Employer proved by substantial evidence that Claimant committed willful misconduct. We disagree.

7

Substantial evidence is relevant evidence sufficient to allow a reasonable mind to reach a conclusion. *Kauffman Metals, LLC v. Dep't of Labor & Indus., Office of Unemployment Tax Servs.*, 126 A.3d 1045 (Pa. Cmwlth. 2015). The Board is the ultimate finder of fact, resolving all issues of credibility, conflicting evidence, and evidentiary weight. *Ductmate Indus., Inc. v. Unemployment Comp. Bd. of Review*, 949 A.2d 338 (Pa. Cmwlth. 2008). The question is not whether the evidence would support different findings from those made by the Board, but rather, whether the record evidence supports the findings the Board actually made. *Id.*

In her Petition for Review, Claimant acknowledges that "there was conflicting testimony" concerning whether she pushed, poked, or otherwise came into physical contact with Corporal Felder. Pet. for Review at 3. The Board's findings establish that Corporal Felder testified very differently concerning what happened. The witnesses' testimony also varied, and none of the witnesses could say definitively whether Claimant pushed or poked Corporal Felder, although Deputy Orbin stated he saw Claimant put her hand on Corporal Felder's chest. N.T. 1/16 at 24, 28. The Board, as the finder of fact, had discretion to resolve the conflicts in the testimony and to determine which evidence was credible. *Ductmate*, 949 A.2d at 342. The Board was entitled to credit Corporal Felder's testimony that Claimant pushed him and repeatedly poked his chest with her finger. *See* N.T. 1/16 at 13-14, 16. That testimony constituted substantial evidence to support the Board's finding of willful misconduct.

We also agree with the Board's conclusion that Claimant's behavior, as found by the Board, constituted willful misconduct under the *Geisinger* analysis set forth above.

8

First, Employer established its applicable rules and policies. The evidence demonstrated that Employer had a workplace violence policy prohibiting intimidation and unwanted physical contact, a code of ethics requiring employees to refrain from conduct that would reflect unfavorably on Employer or the county, and a policy manual similarly requiring employees to obey the law and refrain from conduct that would bring discredit on themselves or Employer. F.F. Nos. 14-16.

Second, Employer established Claimant's awareness of the rules and policies. The Board expressly found that Claimant was familiar with Employer's workplace violence policy, code of ethics, and policy manual. F.F. Nos. 14-16. Claimant herself testified to her familiarity with the violence policy and code of ethics; indeed, she conducted training sessions on the code of ethics and helped draft the violence policy. N.T. 1/16 at 66, 71.

Third, Employer established that Claimant violated its rules and policies. Undoubtedly, a physical confrontation in the workplace with a subordinate violates any employer's reasonable expectations for the behavior of its employees. Indeed, although Claimant denies engaging in the conduct at issue, she does not dispute that such behavior constitutes willful misconduct.

The burden therefore shifted to Claimant to show good cause for her misconduct. We agree with the Board that she failed to do so. As the Board correctly observed, Claimant has never argued that pushing, poking, and yelling at Corporal Felder should be excused; rather, she has simply denied that she engaged in that conduct. The Board, as the finder of fact, found otherwise. As set forth above, there is substantial evidence to support the Board's finding.

## B. Disparate Treatment

Claimant further suggests she should be eligible for UC benefits, notwithstanding the Board's finding of willful misconduct, because Employer subjected her to disparate treatment by terminating her employment but not Corporal Felder's after their altercation. Claimant has not established disparate treatment.

In the UC context, disparate treatment of an employee is an affirmative defense, in that an employee discharged for willful misconduct may still be eligible for UC benefits if the employer has treated the claimant differently from other employees by discharging her. *Allen v. Unemployment Comp. Bd. of Review*, 189 A.3d 1128 (Pa. Cmwlth. 2018). However, "the mere fact that one employee is discharged for willful misconduct and others are not discharged for the same conduct does not establish disparate treatment." *Am. Racing Equip., Inc. v. Unemployment Comp. Bd. of Review*, 601 A.2d 480, 483 (Pa. Cmwlth. 1991).

In order to establish the affirmative defense of disparate treatment, a claimant must show that: (1) the employer discharged the claimant, but did not discharge other employees who engaged in similar conduct; (2) the claimant was similarly situated to the other employees who were not discharged; and (3) the employer discharged the claimant based upon an improper criterion. *See Dep't of Transp. v. Unemployment Comp. Bd. of Review*, 755 A.2d 744, 748 (Pa. Cmwlth. 2000) (stating that "the essence of disparate treatment is not only whether unlawful discrimination has occurred but also whether similarly situated people are treated differently, based upon improper criteria"). If the claimant makes this showing, the burden then shifts to the employer to show that it had a proper purpose for discharging the claimant. *Geisinger*, 964 A.2d at 974. Here, Claimant failed to establish any of the three requisite elements of disparate treatment.

First, the Board found that Claimant pushed Corporal Felder and repeatedly poked him in the chest with her finger. F.F. No. 8. There is no allegation, much less evidence, of any similar conduct by Corporal Felder. Accordingly, Claimant has failed to establish the first element of a disparate treatment defense.

Second, in determining whether Claimant and Corporal Felder were similarly situated, the severity of Claimant's conduct as compared to the conduct of Corporal Felder is again relevant. *Geisinger*, 964 A.2d at 976. Claimant's conduct, as found by the Board, was more severe than Corporal Felder's. In addition, as the party who engaged in physical contact, Claimant was the instigator of that conduct. The instigator of a confrontation is not similarly situated to the other employee. *Allen*. Moreover, a supervisor who engages in misconduct toward a supervised employee is not similarly situated to that employee. *See Kelly v. Unemployment Comp. Bd. of Review* (Pa. Cmwlth., No. 2518 C.D. 2011, filed October 10, 2012)[5] (citing *Rebel v. Unemployment Comp. Bd. of Review*, 692 A.2d 304 (Pa. Cmwlth. 1997) (management and non-management employees not similarly situated); *Am. Racing*, 601 A.2d at 482 (termination of supervisor but not other employees for same conduct was not disparate treatment)). For these reasons, Claimant has not established that she and Corporal Felder were similarly situated.

Finally, Claimant has not shown that she was discharged based on an improper criterion. Employer's investigation concluded, and the Board found as a fact, that Claimant improperly pushed and poked Corporal Felder. Employer offered evidence concerning the various rules and policies Claimant violated in so doing. *See* N.T. 1/16 at 48-50 & Exs. E-4 – E-6. Claimant offered no evidence that violations of those rules and policies were not proper criteria for discharge.

---

[5] Unreported opinions may be cited as persuasive authority pursuant to this Court's internal operating procedures. 210 Pa. Code § 69.414(a).

11

Accordingly, we conclude that Claimant failed to establish an affirmative defense of disparate treatment.

## C. Written Statements by Witnesses to the Confrontation

Claimant asserts that the Board erred by crediting documentary evidence from Sheriff Held and Deputy Appleby describing what they witnessed during the confrontation between Claimant and Corporal Felder. *See* C.R., Item #2 (Claimant Questionnaire with Attachments) at 7, 8. We disagree.

Claimant fails to support her argument on this issue with any explanation, legal analysis, or citation to legal authority. The argument is therefore waived. *Rapid Pallet v. Unemployment Comp. Bd. of Review*, 707 A.2d 636 (Pa. Cmwlth. 1998); *see* Pa. R.A.P. 2119(a) (argument in appellate brief should include pertinent legal discussion and citations to authority).

Even if this claim were not waived, we would conclude that Claimant's argument lacks merit. Claimant has provided no basis for objecting to the documentary evidence. Both Corporal Felder and Deputy Appleby testified and were available for cross-examination. Further, the documentary statements in question were attached by Claimant herself to her UC questionnaire. *See* C.R., Item #2. Accordingly, Claimant has no basis to object to either the admission of the documents in evidence or the Board's reliance thereon.

## D. Alleged Bias by the Board's President

Claimant also baldly alleges bias by Richard W. Bloomingdale, chair of the Board, merely due to his position as president of the Pennsylvania AFL-CIO. As with her prior claim, Claimant has also waived this issue by failing to support her argument with any factual discussion, legal analysis, or citation to legal authority.

12

*See Rapid Pallet*, 707 A.2d at 638. Moreover, she fails to point to any examples in the record of purported bias against her.

### E. Access to Corporal Felder's Personnel File

Most of Claimant's two-page argument in her appellate brief focuses on her assertion that the Referee erred in denying her access to Corporal Felder's personnel file during the course of the remand hearing. However, she failed to raise this issue in her appeal to the Board.[6] Therefore, it is waived. *Crabbe*, 179 A.3d at 1189.

Even if Claimant had not waived this claim, we would conclude that it lacks merit. Claimant fails to explain how any information that might have been contained in the personnel file would have been relevant to her unemployment proceeding. She argues Corporal Felder had a history of acting disrespectfully toward female deputies. Despite unrebutted testimony from a human resources employee at the remand hearing that the personnel file contained no documentation of such behavior by Corporal Felder, N.T. 5/17 at 9-10, 81, Claimant insists a review of the personnel file itself would reveal such information. However, even assuming the personnel file contained information documenting a history of disrespectful behavior by Corporal Felder, Claimant fails to explain how or why that information would be relevant to a factual determination of whether she did or did not push or poke Corporal Felder during their confrontation.[7] It was that behavior by Claimant that

---

[6] Claimant also did not raise this issue in her statement of issues for review; however, omission of an issue from the statement of objections in a petition for review does not necessarily waive that issue if the appellate court is able to engage in meaningful review of the issue based on the certified record. Pa. R.A.P. 1513(d)(5).

[7] As explained above, to the extent Claimant sought such evidence in order to raise an affirmative defense to the willful misconduct charge by suggesting disparate treatment of Corporal Felder's alleged misconduct, that claim is without merit because Claimant and Corporal Felder did not engage in the same conduct, Claimant and Corporal Felder were not similarly situated, and Employer discharged Claimant based on proper criteria.

was found to constitute willful misconduct. To the extent Claimant suggests that Corporal Felder's alleged history of disrespectful behavior justified her physical conduct toward him, that claim is without merit.

## IV. Conclusion

For the reasons discussed above, we affirm the Board's Order.


_____
ELLEN CEISLER, Judge

14

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Patricia G. Fritz,                          :
                    Petitioner              :
                                            :
        v.                                  : No. 1034 C.D. 2019
                                            :
Unemployment Compensation                   :
Board of Review,                            :
                    Respondent              :

# **O R D E R**

AND NOW, this 4th day of May, 2020, the Order of the Unemployment Compensation Board of Review is AFFIRMED.

_____
ELLEN CEISLER, Judge